IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
*ex rel.* CINDY LEE HARTMAN,          )
         Plaintiff,                 )
                                    )
     v.                             )   Civil Action No.  02-1948
                                    )
ALLEGHENY GENERAL HOSPITAL,         )
         Defendant.                 )

MEMORANDUM

Gary L. Lancaster,
District Judge.                                     August 23, 2005

This is an action under the Federal False Claims Act and in retaliatory discharge. Plaintiff, Cindy Lee Hartman, alleges that defendant, Allegheny General Hospital ("AGH"), double billed Medicare for diagnostic testing, in violation of the Federal False Claims Act. 31 U.S.C. §3729. She also alleges that she was fired in violation of the anti-retaliation provisions of that Act and Pennsylvania's Whistleblower Statute. 31 U.S.C. §3730(h); 43 Pa. Cons. Stat. §1422. Plaintiff seeks damages, on behalf of the United States, for the false claims submitted to Medicare, as well as reinstatement, damages, costs, and fees for her wrongful discharge. Defendant has filed a counterclaim seeking recovery of charges that it alleges plaintiff improperly deleted from AGH's billing system, totaling more than $68,000.

Before the court are two motions for summary judgment. Defendant has filed a motion for summary judgment on all counts of plaintiff's amended complaint arguing that plaintiff cannot present evidence sufficient to support her claims [doc. no. 31]. Plaintiff has filed a motion for summary judgment on defendant's counterclaim arguing that a defendant in an action commenced under the Federal False Claims Act cannot assert a counterclaim against the individual plaintiff [doc. no. 34].

For the following reasons, defendant's motion for summary judgment will be granted. Plaintiff's motion for summary judgment will be denied. As a result of these rulings, the only remaining cause of action in this case is defendant's state law counterclaim for recovery of the wrongfully deleted charges. This court no longer has federal question jurisdiction in this case. Nor does this court have diversity jurisdiction over the remaining state law cause of action. Therefore, we will exercise our discretion and dismiss the counterclaim.

I.   BACKGROUND

The following facts, unless otherwise indicated, are undisputed.

Ms. Hartman was a cardiology billing clerk at AGH from July of 1997 until April 12, 2002, when she was discharged. Her job was to review hard copies of charge slips for cardiology services, identify and correct errors, and enter the appropriate information into the computerized billing system. The information was then used by other members of AGH's staff to create the bills that were sent to patients and third parties, including Medicare and private insurers.

### 1. False Claims Act Claim

Plaintiff alleges that AGH submitted false claims to Medicare for electrocardiogram (EKG) tests. Under Medicare rules, Medicare would pay for an EKG over-read only if it resulted in "added value" to the patient. An over-read occurred when a cardiology department doctor read a patient's EKG after an Emergency Room doctor had already read it. If the cardiology department doctor's reading of the EKG was the same as the Emergency Room doctor's, under the Medicare rule, no "value" had been "added" and Medicare would pay for only one reading. According to plaintiff, because AGH occasionally billed Medicare for both EKG readings in error, AGH violated the Federal False Claims Act.

There is no dispute that AGH mistakenly billed Medicare for EKG over-reads.[1]  In fact, in the summer of 2001, plaintiff was asked to take part in a series of meetings regarding this issue. The goal of these meetings was to establish procedures and safeguards to prevent Medicare from mistakenly being billed for EKG over-reads.  After the meetings, human and computerized procedures were implemented to ensure that Medicare was not billed for the over-reads.  Apparently the procedures were less than fool proof and in early 2002, plaintiff was again asked to take part in a meeting to address the issue.  Plaintiff has stated that she had no independent knowledge that Medicare was being billed for EKG over-reads other than the information provided to her by other AGH staff members during and in connection with these meetings.[2]

---

[1] AGH has refunded Medicare for improperly charged EKG over-reads.

[2] Plaintiff has also referred to over-billing by two particular cardiology department doctors in discovery and papers filed with the court.  However, she has not included any argument on this matter, nor provided any evidence regarding these alleged instances of wrongdoing, in her opposition to defendant's motion.  Her argument in opposition to defendant's motion for summary judgment is based solely on AGH's alleged double billing of Medicare for EKG readings.

2.  <u>Retaliatory Discharge</u>

Around the time of the second meeting regarding EKG over-reads in early 2002, the cardiology department initiated an internal audit. The director of the billing department conducted the audit because the cardiology department's charges did not match the department's operational volume on the November 2001 financial statements. The audit was not conducted to review or investigate plaintiff's work, but rather to locate the source of the wide discrepancy between November's operational volume and billing charges. However, the audit revealed that the reason for this discrepancy was that plaintiff had deleted any reference to a backlog of cardiology charges that had accumulated while she was on sick leave when she returned to work in December of 2001.

Plaintiff claims that the charges were deleted by mistake and that she immediately told her supervisor that she had made a billing error. Defendant claims that plaintiff purposefully deleted the charges upon returning from sick leave as a way to "catch up" on her billing backlog. Regardless, the dispute is not material to our resolution of the pending summary judgment motions because plaintiff is unable to show that she was engaged in protected conducted, or reported an instance of wrongdoing. Without satisfying these fundamental requirements plaintiff

cannot successfully assert a claim for retaliatory discharge under either the Federal False Claims Act or the Pennsylvania Whistleblower Statute.

II.    STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id.

In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex v. Catrett, 477 U.S. 317, 325 (1986)); Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor.

III. DISCUSSION

    A. Federal False Claims Act Claim

Plaintiff claims that defendant violated the Federal False Claims Act because it presented charges for EKG over-reads to Medicare in violation of Medicare rules. In order to successfully assert a claim under the Act, a plaintiff must establish that: (1) defendant has presented a claim to the United States government for approval or payment; (2) the claim was false or fraudulent; and (3) the claim was presented with actual

knowledge of its falsity, or in deliberate ignorance or reckless disregard for the truth or falsity of the information. U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004). Plaintiff is unable to satisfy her burden on this claim.

Construing the evidence in the light most favorable to plaintiff, no reasonable juror could conclude that AGH had actual knowledge that a false claim was being submitted to Medicare, or acted with deliberate ignorance or reckless disregard as to the truth or falsity of Medicare claims. According to plaintiff's own evidence, when AGH became aware that a billing error had caused Medicare to be charged for EKG over-reads, it initiated various meetings for the sole purpose of creating procedures and safeguards to prevent the improper billing. When a new computer system revealed that the problem was still occurring, AGH called more meetings in early 2002 to address the issue.

There is no evidence that AGH knowingly submitted fraudulent bills to Medicare. Nor is there any evidence that AGH acted recklessly or with deliberate disregard as to the truth of its billing statements to Medicare. In fact, all evidence is to the contrary. Once AGH discovered the billing error, it attempted to resolve the problem, and revisited it when it reappeared. At most, it can be said that AGH was sloppy, and inexplicably unable to resolve the EKG over-read

issue immediately.[3] However, no reasonable jury could conclude from the evidence that AGH acted intentionally, recklessly, or with deliberate ignorance as to the truth of claims that it submitted to Medicare. Defendant's motion for summary judgment on plaintiff's False Claims Act claim is granted.

### B. Retaliatory Discharge - Federal Law

Plaintiff claims that she was fired because she reported double billing to her supervisors. Under the Federal False Claims Act, it is unlawful for an employer to discriminate against an employee because she engaged in protected conduct under the Act. 31 U.S.C. §3730(h). Protected conduct is defined as actions that are sufficient to further an action filed, or to be filed, under the False Claims Act. Dookeran v. Mercy Hosp. of Pittsburgh, 281 F.3d 105, 108 (3d Cir. 2002) (citing Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 186 (3d Cir. 2001)). In other words, plaintiff must show that her actions could reasonably lead to a False Claims Act case. Id.

---

[3] It is important to note that while Medicare would not pay for EKG over-reads that did not add value to the patient, private insurers would. Therefore, resolving the issue was more complicated than simply removing all EKG over-read charges from the computer billing system.

There is no evidence from which a reasonable jury could conclude that plaintiff engaged in protected conduct. Although plaintiff claims that she "discovered double billing" in 2001 and, again in 2002, and reported it to her supervisors, there is no evidence to support her claim. In fact, all evidence, including plaintiff's own subsequent admissions at her deposition, shows that plaintiff was told about the Medicare billing problem by other AGH staff members and was asked to participate in meetings to resolve the issue. Plaintiff, by her own admission, was not the one who discovered the problem. Plaintiff also admits that she had no independent knowledge of the Medicare billing issue apart from what she learned at these meetings, and that after the meetings in the summer of 2001 she did not become aware of "double-billing" problems again until she was asked to attend another meeting on the issue in early 2002.

Similarly, plaintiff was not the one to report the problem to anyone within, or outside of, AGH. Although there is evidence that plaintiff told her supervisor that she attended a meeting on the EKG over-read issue, the supervisor was already aware of the problem, was already involved in resolving it, and asked her not to call any "pre-emptive meetings" without him. There is no evidence from which a reasonable jury could conclude that plaintiff, by attending meetings to address a billing issue at

the request of other AGH employees, and telling her boss that she attending the meetings, was engaging in conduct sufficient to further a False Claims Act case. Defendant's motion for summary judgment on plaintiff's retaliation claim under the False Claims Act is granted.

### C. Retaliatory Discharge - State Law

Under Pennsylvania's Whistleblower Statute, in order to successfully assert a retaliation claim, plaintiff must show that she was discharged because she reported, or was about to report, an instance of wrongdoing. 43 Pa. Cons. Stat. §1423(a). Wrongdoing is defined as more than a mere technical or minimal violation of federal or state laws or regulations. Id. at §1422. Plaintiff has submitted no evidence from which a reasonable jury could conclude that she reported, or was about to report, an instance of wrongdoing. First of all, it is likely that the problem that AGH was having with billing Medicare for EKG over-reads was nothing more than a technical or minimal violation of federal law. The Pennsylvania law certainly allows for mistakes in attempting to comply with federal and state laws. AGH's Medicare billing problem would appear to qualify as such. However, we need not resolve that issue in order to rule on this matter.

We find that plaintiff has failed to submit any evidence that she reported, or was about to report, the billing problem to anyone. All plaintiff did was to take part in several meetings regarding a billing problem, called by other AGH employees. She had no personal knowledge of any improper billings having been made to Medicare. Although plaintiff told her supervisors that she attended these meetings, they were already aware of, and addressing, the billing problem. We will not construe plaintiff's conversations with her boss as to her whereabouts during business hours and the goings on of her department as reports of wrongdoing under the Pennsylvania statute.

Plaintiff has submitted no evidence that, unsatisfied with her boss's response, she found it appropriate to "report" or planned to "report" the problem to a higher-level employee, or anyone outside of the organization. In fact, plaintiff admits that after the first set of meetings in 2001 she was not involved with the problem again until she was asked to attend another meeting in early 2002 on the same issue. No reasonable juror could find, based on this evidence, that plaintiff reported or was about to report an instance of wrongdoing. Defendant's motion for summary judgment on plaintiff's Pennsylvania Whistleblower Statute claim is granted.

D. <u>Defendant's Counterclaim - Deleted Charges</u>

1. <u>Summary Judgment</u>

Plaintiff asks this court to enter summary judgment in her favor on defendant's counterclaim. In its counterclaim, defendant seeks recovery of approximately $68,000, which represents the value of the service charges that plaintiff allegedly deleted from the computer system upon her return from sick leave in December of 2001. Plaintiff argues that "[a]s a rule, counterclaims are not permitted in qui tam actions. (citing cases)". There is no such rule. Defendant's counterclaim does not seek contribution from plaintiff for the damages caused by the allegedly false claims themselves. Instead, defendant seeks damages on a wholly unrelated claim. Counterclaims that seek damages on claims unrelated to the allegedly fraudulent claims under the False Claims Act are permitted. <u>U.S. ex rel Madden v. General Dynamics Corp.</u>, 4 F.3d 827, 830 (9th Cir. 1993). Plaintiff's motion for summary judgment is denied.

2. <u>Jurisdiction</u>

Because we have granted defendant's motion for summary judgment as to plaintiff's claims and denied plaintiff's motion for summary judgment as to defendant's counterclaim, the only cause of action that remains in this case is defendant's state

14

law counterclaim. This court no longer has federal question jurisdiction over any part of this case. Nor does this court have diversity jurisdiction over the state law counterclaim. Therefore, we must address whether this court should retain jurisdiction over the remaining state law cause of action under the circumstances.

A district court has discretion to decide whether to retain jurisdiction over a state claim when the federal claim has been eliminated from the case. 28 U.S.C. §1367(c)(3). Notions of judicial economy, convenience, and fairness guide the decision. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966). Except under extraordinary circumstances these considerations militate against a district court retaining jurisdiction where there are no longer any federal claims. <u>Shaffer v. Board of Sch. Directors</u>, 730 F.2d 910, 912 (3d Cir. 1984). The Court of Appeals for the Third Circuit has stated that "time already invested in litigating the state cause of action is an insufficient reason" to retain jurisdiction. <u>Id</u>. And the United States Supreme Court has stated that "[n]eedless decisions of state law should be avoided...Certainly if the federal claims are dismissed before trial...the state claims should be dismissed as well." <u>Gibbs</u>, 383 U.S. at 726.

Upon consideration of the relevant factors, the above case law, and in the exercise of our discretion, we will dismiss defendant's state law counterclaim. The state law claim is the only one remaining; without it, there will be no further proceedings in federal court on this matter, with it, there will be a trial. Judicial economy would best be served if the federal courts focus their time and attention on matters that raise issues under federal law. Convenience and fairness would also best be served by dismissing the counterclaim. Dismissing the counterclaim is fair to the parties because had plaintiff never brought her action under the Federal False Claims Act, state court would have been defendant's only available forum had it wanted to recover for the deleted charges. There is no inherent unfairness or inconvenience in sending the parties to the court that they would have originally been in had it not been for plaintiff's filing of a Federal False Claims Act claim.

IV.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The court will exercise its discretion and dismiss the state law counterclaim for lack of jurisdiction.

```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

UNITED STATES OF AMERICA,       )
*ex rel.* CINDY LEE HARTMAN,    )
    Plaintiff,           )
                         )
    v.                   )  Civil Action No.  02-1948
                         )
ALLEGHENY GENERAL HOSPITAL,     )
    Defendant.           )

<u>ORDER</u>

AND NOW, this 25th day of August, 2005, IT IS HEREBY ORDERED that defendant's motion for partial summary judgment [doc. no. 31] is GRANTED. Summary judgment shall be entered in defendant's favor as to Counts I, II, and III of plaintiff's amended complaint.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED.

Because this court lacks jurisdiction over defendant's counterclaim, the case is HEREBY DISMISSED.

The Clerk of Court is directed to mark this case CLOSED.

BY THE COURT:

_____, J.

cc:  All Counsel of Record